# DECLARATION OF SPECIAL AGENT JACK KANE

Pursuant to 28 U.S.C. § 1746 and the laws of the United States, I, Jack Kane, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief:

1. I am a Special Agent with the Federal Bureau of Investigation assigned to the Wilmington Resident Agency of the Charlotte, North Carolina Field Office. I have been an FBI Special Agent for approximately 10 years. Prior to that, I was an Intelligence Officer in the United States Marine Corps for approximately 5 years. I am an investigative and law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). My duties as a Special Agent include full-time investigations of a wide range of federal criminal offenses. Over the last 10 years, I have received extensive training and experience investigating drug and drug trafficking related matters.

2. This declaration is based on my own knowledge and experience as well as information provided by other federal, state, and/or local law enforcement agencies.

3. This declaration is made in support of the forfeiture of a combined total $92,561.36 in United States Currency seized collectively from Joe Francis RHEM JR. on October 26, 2015, and on April 29, 2016, in the Eastern District of North Carolina. The U.S. currency is forfeitable pursuant Title 21, U.S.C, Section 881.

4. On October 26, 2015 at approximately 2:05 pm, Detective R. Holton of New Bern Police Department ("NBPD") observed Cheron Shird get into the front passenger door of a grey Honda sedan with NC license plate number CHB-9982. The Honda sedan was parked in the Public Vehicular Area ("PVA") of the Burger King located on Neuse Boulevard in New Bern, North Carolina.

5. Detective R. Holton had knowledge of Shird's extensive criminal history, including the sale and delivery of controlled substances. From past experience, Detective R. Holton knew Shird to conduct the sale and delivery of controlled substances in open PVAs of businesses in the New Bern area.

6. After approximately five minutes, Shird exited the Honda sedan. The Honda sedan then drove out of the Burger King PVA, turning right on to Neuse Boulevard.

7. Based on a reasonable belief that the driver of the Honda sedan had engaged in the purchase of controlled substances from Shird, Detective R. Horton initiated a traffic stop on the Honda sedan. After turning on his vehicle's lights and sirens, the Honda sedan continued driving slowly on Neuse Boulevard. Detective R.


GOVERNMENT EXHIBIT A

Horton observed the driver repeatedly lean right and reach in the front passenger seat with his right hand while looking back at the unmarked patrol vehicle.

8. The driver of the Honda sedan then turned right on to S. Glenburnie Road and continued driving very slowly while manipulating something in the front passenger seat with his right hand.

9. The Honda sedan came to a stop in the entrance of the Furniture Fair parking lot off of S. Glenburnie Road. The driver, later determined to be Joe RHEM JR., held his hands out of the driver's side window. Detective R. Holton instructed RHEM JR. to exit the vehicle. RHEM JR. appeared to reach for his pants pocket, and Detective R. Holton then ordered RHEM JR. to the ground, where he was handcuffed.

10. Subsequent to a search of RHEM JR.'s person after RHEM JR. was detained, Detective R. Holton located loose United States Currency in both pockets of his pants that totaled $1,409.50.

11. A K9 sniff was conducted on the vehicle, with a positive alert to the vehicle. A search of the vehicle yielded a large amount of United States currency in the center console of the vehicle, an open fountain drink with a plastic baggie of white powder inside, two more baggies with white powder under the fountain drink, and powdery sludge in the bottom of the fountain drink. Sergeant Wilcutt field tested the powder in the first plastic bag as well as flakes recovered from the floorboard of the vehicle. Both gave a quick and strong positive result for cocaine.

12. Part of the currency located in the vehicle was loose and thrown together in mixed denominations; part of the currency was $20.00 bills grouped together and then rubber banded in a larger quantity; and part of the currency was a large quantity of bills rubber banded together. Based on knowledge and experience, this is a common packaging method used in drug trafficking for currency.

13. The total sum seized on this date was $12,395.50 in United States Currency; $708.50 in United States Currency was turned over to the North Carolina Department of Revenue for a tax warrant that RHEM JR. owed on. $11,687.00 remains in the custody of NBPD.

14. On April 27, 2016, Joe RHEM JR. was indicted in the Eastern District of North Carolina on two counts: (1) conspiracy to manufacture, distribute, dispense and possess with intent to distribute 5 kilograms or more of cocaine from January 2007 to April 27, 2016; and (2) possession with intent to distribute a quantity of cocaine on October 26, 2015.

15. On or about April 29, 2016, due to an outstanding Federal warrant, the Coastal Narcotics Enforcement Team, consisting of NBPD and CCSO law enforcement, sought to locate and arrest RHEM JR.

16. Following a radio alert, Sergeant Wilcutt of the NBPD conducted a traffic stop on a gray Mazda operated by RHEM JR.

17. Sergeant Wilcutt conducted a search of RHEM JR. and located $1,187.36 in the left pocket of his sweatpants. At the same time, a K9 sniff was conducted, with a positive alert to the vehicle. Officers searched the vehicle and located a baggie that contained residue that field tested positive for cocaine. RHEM JR. was placed under arrest.

18. NBPD maintains custody of the $1,187.36 in United States Currency seized from RHEM JR. at the time of his arrest on April 29, 2016.

19. Due to the totality of circumstances surrounding RHEM JR.'s arrest, Investigator J.R. Buck of the Craven County Sheriff's Office ("CCSO") obtained a search warrant for 1104 Karen Dr, Apartment B4 in New Bern, North Carolina. RHEM JR. was known to frequent this location.

20. The search warrant was executed the same day, April 29, 2016.

21. Throughout the kitchen and first floor, deputies located a white in color scale, one bag of "Hefty" 1 gallon storage slider bags, one box of "Hefty" quart-sized storage slider bags, two opened boxes of vinyl disposable gloves, a box of opened baking soda with a .22 caliber cartridge, and a silver scale with white residue on the same inside a drawer covered with similar white residue, which was swabbed and tested positive for cocaine. Storage bags, vinyl disposable gloves, and scales are items known to be used in the packaging and distribution of narcotics.

22. In the master bedroom, deputies located several men's shirts and Air Jordan shoes, consistent with what RHEM JR. had previously been observed wearing. Deputies also located several pieces of mail with RHEM JR.'s name and 1104 Karen Dr, Apartment B4 on the same.

23. In addition, in the master bedroom, deputies located $6,301.00 in United States Currency in the top dresser drawer, a torn $100.00 bill in the drawer immediately below, $31,000.00 in United States Currency in a black plastic bag in the master bedroom closet, and smaller denominations of currency scattered throughout the master bedroom. Also found in the master bedroom were a plastic bag containing 17.63 grams of marijuana, white rolling papers, brown pre-rolled papers (one containing marijuana), a metal Genco science plate, digital scale weights, and an opened pack of "Raw Cone" rolling papers with two plastic straws.

24. In the spare bedroom, Investigator Buck located a black plastic bag underneath the bed that contained $42,025.00 in United States Currency.

25. The total sum seized on this date was $79,687.00 in United States Currency.

26. CCSO maintains custody of the $79,687.00 seized as a result of the search warrant executed at RHEM JR.'s residence on April 29, 2016.

27. On November 28, 2016, Joe RHEM JR. pled guilty in United States District Court for the Eastern District of North Carolina, pursuant to a written plea agreement, to conspiracy to manufacture, distribute, dispense and possess with intent to distribute 5 kilograms or more of cocaine from January 2007 to April 27, 2016. On May 24, 2018, Joe RHEM JR. was sentenced to 159 months' imprisonment. The plea agreement entered into by RHEM JR. contained RHEM JR.'s consent to forfeit all property seized during the course of the investigation. United States v. Joe Francis Rhem, Jr., No. 7:16-CR-00050 (E.D.N.C. Apr. 27, 2016), D.E. 32 at ¶ 2.

28. During the investigation related to Case No. 7:16-CR-00050, several cooperating witnesses provided information regarding RHEM JR.'s drug trafficking activities resulting in his being held accountable at his sentencing for the distribution of between 50 and 150 kilograms of cocaine from 2007 to 2016.

29. RHEM JR. has a history of criminal convictions involving the possession and/or distribution of narcotics:

    a. On July 17, 2006, RHEM JR. was sentenced in Jones County Superior Court, NC, to 12 to 15 months in custody for possession with intent to manufacturer, sell, or deliver cocaine (05CRS50107); selling cocaine (05CRS50108); and maintaining a vehicle, dwelling, or place for a controlled substance (05CRS50331).

    b. On May 2, 2011, RHEM JR. was sentenced in Jones County Superior Court, NC, to 10 to 12 months suspended for possession with intent to sell or deliver cocaine (09CRS50061).

    c. On November 13, 2012, RHEM JR. was sentenced in Jones County Superior Court, NC to 6 to 17 months in custody for possession of cocaine.

30. During the presentence investigation, RHEM JR. reported to the U.S. Probation Office that, from 2015 to April 28, 2016, he was employed driving trucks and operating heavy machinery with Riggs Brothers Farm in Pollocksville, earning $3,000 monthly. From 2002 to July 2015, RHEM JR. reported that he was either unemployed or incarcerated.

31. Based on the foregoing, probable cause exists to believe that the aforementioned $92,561.36 in United States Currency was furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq.*, is proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act, and is, therefore, subject to forfeiture to the United States pursuant to Title 21, U.S.C., Section 881(a)(6). The foregoing facts are also sufficient to support a reasonable belief that the government will meet its burden of proof to establish the forfeitability of the currency at trial.

Respectfully submitted this 31st day of July 2024.

_____
Jack Kane
Special Agent
Federal Bureau of Investigation